**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

JOSE DEL CARMEN L. RAMIREZ                         CIVIL ACTION

VERSUS                                            NO. 19-13187

DARREL VANNOY, WARDEN                             SECTION: "G"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Jose Del Carmen L. Ramirez, is a convicted inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.    In July 2009, Ramirez and co-defendant, Jose Maldonado, were charged by grand jury indictment with one count of second-degree murder.[1]    Subsequently, Ramirez's motion to sever his trial from that of his

---

[1]  State Rec., Vol. 1 of 10, Grand Jury Indictment (Jose Delores Ramirez and Jose Angel Ramirez Maldonado). Maldonado ultimately pleaded guilty as an accessory after the fact to second degree murder. State Rec., Vol. 1 of 10, Docket Master Entry, 3/19/12.

co-defendant was granted.    On October 6, 2011, a jury found Ramirez guilty as charged.[2] On November 22, 2011, he was sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence.[3]

On direct appeal, his appointed counsel raised several assignments of error, including:   (1) the evidence presented was insufficient to support his conviction for second-degree murder; (2) the trial court erred in allowing the State to introduce inadmissible hearsay through police officers thereby denying him the right to confront the witnesses who identified him; and (3) the trial court erroneously denied his motion to record simultaneous interpretations in English and Spanish versions at trial.    On November 12, 2014, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[4] On October 9, 2015, the Louisiana Supreme Court denied his application for writ of certiorari.[5]

On or about August 1, 2016, Ramirez submitted an application for post-conviction relief to the state district court.[6]    In that application, he raised four claims of ineffective assistance of trial counsel in the following respects:    (1) failing to challenge a prospective

---

[2] State Rec., Vol. 1 of 10, Trial Minute Entries, 10/4/11 through 10/6/11.

[3] State Rec., Vol. 1 of 10, Sentencing Minute Entry, 11/22/11.

[4] *State v. Ramirez*, 2013-KA-1554 (La. App. 4 Cir. 11/12/14), 154 So.3d 636; State Rec., Vol. 1 of 10.

[5] *State v. Ramirez*, 2014-KO-2655 (La. 2015), 178 So.3d 1000; State Rec., Vol. 10 of 10.

[6] State Rec., Vol. 1 of 10, Uniform Application for Post-Conviction Relief.

juror; (2) failing to compel the appearance of several witnesses at trial; (3) stipulating to a ballistics report; and (4) failing to object to the scope of the coroner's testimony.    On September 6, 2018, the state district court denied relief on the merits.[7]    On November 2, 2018, the Louisiana Fourth Circuit Court of Appeal denied his supervisory writ application.[8] On September 6, 2019, the Louisiana Supreme Court denied his application for supervisory writ of review.[9]

On or about October 18, 2019, Ramirez filed the instant federal application for habeas corpus relief.[10]    In that application, he asserted the three grounds raised on direct appeal and the four grounds of ineffective assistance of trial counsel raised during post-conviction proceedings in the state courts.    On September 3, 2020, the State filed a response.[11]    The State concedes that the instant application is timely and that the claims were exhausted in the state courts.    The State argues that the claims should be denied on the merits.[12]    No reply was filed.

---

[7]  State Rec., Vol. 1 of 10, Judgment denying Post-Conviction Relief.

[8]  State Rec., Vol. 9 of 10, *State v. Ramirez*, 2018-K-0880 (La. App. 4 Cir. 11/2/18); State Rec., Vol. 9 of 10.

[9]  *State v. Ramirez*, 2018-KH-2030 (La. 9/6/19), 277 So.3d 1172; State Rec., Vol. 9 of 10.

[10]  Rec. Doc. 5, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus and Rec. Doc. 5-1, Memorandum in Support.

[11]  In the interim, the Court liberally allowed the respondent multiple extensions of time due to extenuating circumstances brought about by the global Covid-19 pandemic.

[12]  Rec. Doc. 19.

## Facts

On direct appeal, the Louisiana Fourth Circuit briefly summarized the facts adduced

at trial:

> On the evening of May 1, 2009, the victim, Irma Sanchez, and her husband and
> two children were having a picnic with friends outside of the Pick and Go
> convenience store on Elysian Fields Avenue. Upon arriving at the gas station,
> the defendant, Jose Del Carmen Ramirez, recognized one of the people at this
> picnic as someone with whom his brother had recently had an altercation. The
> defendant approached the group inquiring about the incident and ultimately
> retrieved a machete from the trunk of his car because the other individual was
> armed with a bat. After the defendant swung the machete at the other
> individual multiple times, he fled the scene in a red Pontiac. This fight was
> captured on the gas station's surveillance system.
>
> About twenty minutes later, the red Pontiac returned to the gas station; and
> the passenger began shooting at the group at the picnic while the vehicle drove
> slowly away. This incident was not captured on any surveillance system. Three
> eyewitnesses independently identified the defendant as the shooter to the
> responding officer, Officer Janssen Valencia ("Officer Valencia"), and informed
> her as to where the defendant lived.
>
> Thereafter, the three eyewitnesses and Officer Valencia proceeded to locate
> the shooter's residence, as the individuals did not know his physical address.
> Upon passing the anticipated location, the three eyewitnesses identified the
> man exiting the red Pontiac, the defendant, as the person they had seen shoot
> the victim. The defendant was then arrested and charged with second-degree
> murder. After a three-day trial, a jury found the defendant guilty as charged.
> The defendant was sentenced to serve life in prison, without any benefits.[13]

## General Standards of Review

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure

---

[13] *State v. Ramirez*, 154 So.3d at 637-38.

questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court

"identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 572 U.S. 415, 426 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Id*. (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

## Analysis

### A.  Sufficiency of the Evidence

Ramirez contends that the evidence was insufficient to convict him of second-degree murder because the State did not prove his identity as the perpetrator. He argues that "there is no physical evidence connecting him to the crime scene, no witnesses testified at

trial identifying him as the shooter and that his confession was coerced."[14]

The sufficiency claim was considered and denied on direct appeal.    The Louisiana

Fourth Circuit rejected his sufficiency-of-the-evidence claim, holding:

> In *State v. Huckabay*, 2000–1082 (La. App. 4 Cir. 2/6/02), 809 So.2d 1093, this Court identified the standard for reviewing a sufficiency of the evidence challenge:
>
>> In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Green*, 588 So.2d 757 (La. App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. *State v. Mussall*, 523 So.2d 1305 (La. 1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. *Mussall*; *Green*; *supra*. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." *State v. Smith*, 600 So.2d 1319 (La. 1992) at 1324.
>>
>> In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Shapiro*, 431 So.2d 372 (La. 1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from *Jackson v. Virginia*, *supra*, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. *State v. Wright*, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the *Jackson* reasonable doubt standard. *State*

---

[14]  Rec. Doc. 5-1, p. 20.

> *v. Jacobs*, 504 So.2d 817 (La. 1987).

*Id.*, 2000–1082, p. 32, 809 So.2d at 1111(quoting *State v. Ragas*, 98–0011, pp. 13–14 (La. App. 4 Cir. 7/28/99), 744 So.2d 99, 106–07).

The reviewing court shall not disturb the fact-finder's determination concerning the credibility of witnesses when reviewing sufficiency of the evidence claims unless it is clearly contrary to the evidence. *State v. Rosiere*, 488 So.2d 965, 968 (La. 1986); *State v. James*, 2009–1188, p. 4 (La. App. 4 Cir. 2/24/10), 32 So.3d 993, 996 (citing *State v. Vessell*, 450 So.2d 938, 943 (La. 1984)).

The defendant in the instant case was convicted of second-degree murder. We have reviewed the elements of this offense and, viewing the testimony and evidence submitted at trial in the light most favorable to the State, have determined that the evidence is sufficient to support a finding of guilt. The pertinent elements of the defendant's conviction are: the killing of a human being, while engaged in the perpetration or attempted perpetration of assault by drive-by shooting, even though the perpetrator did not possess the specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1(A)(2). La. R.S. 14:37.1 defines assault by drive-by shooting as an "assault committed with a firearm when an offender uses a motor vehicle to facilitate the assault."

The defendant only challenges the sufficiency of the evidence establishing his identity as the person who shot the victim. When the challenge is to the defendant's identity as the perpetrator, the prosecution is required to negate any reasonable probability of misidentification. *State v. Pierce*, 2012–0879, p. 4 (La. App. 4 Cir. 12/10/13), 131 So.3d 136, 140; *State v. Galle*, 2011–0930, p. 31 (La. App. 4 Cir. 2/13/13), 107 So.3d 916, 935; *State v. Everett*, 2011–0714, p. 15 (La. App. 4 Cir. 6/13/12), 96 So.3d 605, 619. In support of his argument, the defendant argues that there is no physical evidence connecting him to the crime scene, no witness testified at trial identifying him as the shooter, and that his confession was coerced.

In response to the defendant's allegation regarding the absence of physical evidence, the defendant correctly points out that no gun was recovered matching the bullet casings that were found on the scene, and no video surveillance exists depicting the shooting. However, this Court has held that despite the lack of physical evidence, the testimony of any one witness, if believed by the trier of fact, can provide sufficient support for a finding of guilt. *See State v. McElveen*, 2010–0172, p. 19 (La. App. 4 Cir. 9/28/11), 73 So.3d 1033, 1052 (citing *State v. Marshall*, 04–3139, p. 9 (La. 11/29/06), 943 So.2d 362, 369); *State v. Allen*, 2003–2156, p. 8 (La. App. 4 Cir. 5/19/04), 876 So.2d 122, 127 (citing *Marcantel*, p. 9, 815 So.2d at 56); *State v. McZeal*, 99–3061, p.

14 (La. App. 4 Cir. 11/29/00), 779 So.2d 826, 834 (citing *State v. Jones*, 97–2591, p. 7 (La. App. 4 Cir. 9/8/99), 744 So.2d 165, 169); *see also State v. Robinson*, 2002–1869, p. 16 (La. 4/14/04), 874 So.2d 66, 79 (citing *State v. White*, 28,095 (La.App.2d Cir. 5/8/96), 674 So.2d 1018). Thus, the absence of physical evidence by itself fails to prove that the evidence was insufficient.

The defendant also contends the evidence is not sufficient to support his conviction because no witness testified at trial identifying him as the shooter. Through Officer Valencia's testimony, the State provided testimony that a total of three eyewitnesses identified the defendant as the shooter. The defendant presented testimony from one witness concerning his alibi. When reviewing a conviction for sufficiency of the evidence, it is well settled that an appellate court considers all evidence presented at trial, including admissible and inadmissible evidence which was erroneously admitted. *State v. Falkins*, 2012–1654, pp. 8–9 (La. App. 4 Cir. 7/23/14), 146 So.3d 838 (citing *State v. Hearold*, 603 So.2d 731, 734 (La. 1992); *State v. Brown*, 2008–1434, p. 8 (La. App. 4 Cir. 3/18/09), 7 So.3d 1238, 1242). Accordingly, regardless of whether the identification statements admitted through Officer Valencia were improper, they will still be considered during our review of the sufficiency of the evidence.

Additionally, the defendant's argument that no witness testified at trial identifying him as the shooter is a misstatement of the record. The victim's husband testified on direct examination that the shooter was the person who was initially fighting with the machete, and on cross-examination stated that the person using the machete was the defendant. Considering this evidence, it was well within the jury's discretion to conclude that the defendant was the shooter, particularly in light of the defense's own admission that the defendant was the one swinging the machete.

In the defendant's final argument as to the sufficiency of the evidence, he asserts that his confession was admitted in error as it was coerced and not given voluntarily, freely, or knowingly. The defendant is not disputing the trial court's ruling on his motion to suppress the confession; rather, he is alleging that the State's reliance on the statement is, in and of itself, insufficient to support his conviction because the confession was coerced.

This Court stated in *State v. Lee*, 482 So.2d 194 (La. App. 4 Cir.1986), that:

> [T]he rules governing the admissibility of confessions are applicable to admissions involving the existence of criminal intent or inculpatory fact. The Trial Court's determination of the admissibility of either a confession or admission will not be disturbed on review unless it is not supported by the evidence. When reviewing the trial court's

> determination of admissibility, the reviewing court may look to the totality of the evidence presented at the suppression hearing and at the trial itself.
>
> *Id.*, 482 So.2d at 196 (internal citations omitted). The defendant's only argument in support of coercion is that he was handcuffed to a table in a small room for approximately one hour before his statement was recorded, and he was purportedly threatened that "his family would be placed in jail unless he confessed to the shooting." The defendant's failure to present corroborating evidence to support his assertion that threats were made makes this argument unconvincing.
>
> For the abovementioned reasons, we find that the testimony and evidence presented was sufficient to support the jury verdict of guilt beyond a reasonable doubt of second-degree murder. This assignment of error is without merit.[15]

The Louisiana Supreme Court subsequently denied relief without additional stated reasons.

Because a claim challenging the sufficiency of the evidence presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir. 2000).    For the following reasons, the Court finds that Ramirez has made no such showing.

The Louisiana Fourth Circuit properly analyzed the sufficiency claim under *Jackson v. Virginia*, 443 U.S. 307 (1979).    The *Jackson* standard requires a determination regarding whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a

---

[15]  *State v. Ramirez*, 154 So.3d at 639-41.

reasonable doubt.    *Jackson*, 443 U.S. at 319; *Williams v. Cain*, 408 F. Appx. 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).    As stated above, in conducting its sufficiency review, the appellate court properly considered all record evidence without regard to admissibility.    *Barksdale v. Davis*, Civ. Action 4:18-CV-082-Y, 2018 WL 4913785, at *4 (N.D. Tex. Oct. 10, 2018).    Review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.    *United States v. Young*, 107 F. Appx. 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").    Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict.    *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal *habeas* court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.    *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"    *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis added)).    Here, because the state court's decision applying the already deferential *Jackson* standard must be assessed under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."    *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *see also*

*Coleman v. Johnson,* 566 U.S. 650, 651 (2012).

Ramirez argues that the court of appeal mistakenly relied on inadmissible witness identifications and his coerced confession in finding that the evidence was sufficient to establish his identity   Without this evidence, Ramirez contends, the State had only the victim's husband—who admittedly could not identify Ramirez as the passenger in the red car during the drive-by shooting—and no physical evidence linking Ramirez to the murder.   He argues that absent proof he was engaged in the perpetration or attempted perpetration of assault by drive-by shooting, the State failed to prove beyond a reasonable doubt that he was guilty of second-degree murder.   However, as the court of appeal reasonably concluded on the evidence presented at trial, the evidence presented by the State was more than sufficient to establish Ramirez's identity as the perpetrator.

In discussing the investigation that followed the shooting, Officer Janssen Valencia testified that he rode with Detective Matthews and the three Spanish-speaking eyewitnesses, who knew the perpetrator and where he lived, in order to help translate.   He testified, without objection, that the witnesses all began saying "That's him. That's him," when a red car pulled up to the residence and Ramirez got out of the vehicle.   A short time later, they conducted a show-up identification with the witnesses, who each identified Ramirez, and later gave statements to the police.[16]   On cross-examination, he admitted that the witnesses did not describe where they were standing when they allegedly witnessed the shooting.[17]

---

[16] State Rec., Vol. 6 of 10, Trial Transcript (Oct. 5, 2011), pp. 237-39.

[17] *Id.* at 253.

The three witnesses did not testify at trial.

The victim's husband, Domingo Estevez, testified that it was Ramirez who was at the gas station with a machete fighting with another individual and saying he wanted vengeance for his brother's attack before the drive-by shooting occurred, and that he saw the same car return 20 minutes later and continue driving slowly as someone fired multiple shots from the passenger side striking his wife in the head and killing her.    On cross-examination, he admitted that he could not identify who was in the car when it returned.[18]

Ramirez testified at trial in his own defense.    He admitted that he was the individual with the machete at the station, that it was his car shown on the surveillance video and that he had no alibi witness to account for his whereabouts at the time of the shooting. [19] Ramirez's brother, Jorge Alberto Maldonado, testified that he did not know where Ramirez was at the time of the shooting. [20]    Ramirez's defense centered on showing that his confession was involuntary and false.    He testified that his confession was coerced because he was led to believe his family members would "rot in jail" if he did not confess.    He testified that he felt nervous and pressured into falsely confessing that he was the shooter. The defense obviously tried through Ramirez's own testimony to get the jury to reject his damning confession, but the jury plainly did not—as was its absolute prerogative when weighing the evidence.    Ramirez's confession and the strong circumstantial evidence in

---

[18]  *Id.* at 227-29, 231.

[19]  State Rec., Vol. 7 of 10, Trial Transcript (October 6, 2011), pp. 417, 421-23.

[20]  *Id.* at 371-72.

this case more than sufficed to prove Ramirez's identity as the shooter.    Additionally, the weight, if any, to be accorded the evidence concerning spontaneous statements and identification made by non-testifying witnesses—evidence that was not subject to objection or found inadmissible—was entirely within the jury's discretion, as the state court properly held on appeal.    Both of those determinations are to be afforded deference by this Court on habeas review.

Accordingly, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational.    Therefore, Ramirez cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.    Under the doubly-deferential standards of review that must be applied by this federal habeas court, relief is not warranted.

B. *Hearsay/Confrontation Rights Violation*

Ramirez claims that his rights under the federal Confrontation Clause were violated when the state court allowed inadmissible hearsay into evidence at trial.[21]    In rejecting this claim on direct appeal, the Louisiana Fourth Circuit held:

> In this additional assignment of error, the defendant contends that the testimony concerning the three eyewitnesses' identifications was inadmissible hearsay. In support of this contention, the defendant argues that despite no witness identifying him at trial, the state was allowed to circumvent

---

[21]    The State provides no direct response to this claim, that was raised on appeal and in Ramirez's federal petition. Rec. Doc. 5, Petition, p. 11 (Ground Three); Rec. Doc. 5-1, p. 24 (identified as Claim II). The underlying factual grounds were also raised in the context of trial counsel's failure to call the individuals as witnesses at trial, and that claim, as briefed by the parties, will also be addressed later in this report with the other ineffective-assistance-of-counsel claims.

the hearsay safeguards and present evidence through the officers identifying the defendant as the shooter. Furthermore, the defendant argues that the trial court erroneously allowed the state to refer to these identification statements during opening statements and closing arguments.

Unless an irregularity or error is objected to at the time of occurrence, it cannot be complained of after a verdict. La.C.Cr.P. art. 841. A simultaneous objection is required so that the trial court can rule accordingly and cure or prevent any potential error. Thus, on appeal, the defense is limited to those grounds raised at trial. *State v. Keys*, 2012–1177, p. 13 (La. App. 4 Cir. 9/4/13), 125 So.3d 19, 31 (citing *State v. Baker*, 582 So.2d 1320, 1336 (La. App. 4 Cir. 1991)). A review of the record reveals that no objection was made when Officer Valencia testified to the identifications during direct examination. Likewise, the record contains no objection made during opening statements or closing arguments. As such, any alleged error as to Officer Valencia's testimony and the references to it during opening statements and closing arguments was not preserved for appellate review. However, a proper objection was made as to the statements made by Detective Anthony Pardo and Sergeant Regina Williams. Because the defendant has preserved only his objections to these statements for appellate review, they are the only statements that will be considered by this Court.

According to La. C.E. art. 801(A)(1) and (C), hearsay is "an oral or written assertion ... other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." *See State v. Augustine*, 2013–0397, p. 18 (La. App. 4 Cir. 1/22/14), 133 So.3d 148, 159. "Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability." *State v. Weber*, 2002–0618, p. 20 (La. App. 4 Cir. 12/4/02), 834 So.2d 540, 553–54.

The trial transcript reflects that Detective Pardo stated that the three eyewitnesses indicated that the shooter's first name was "Jose" and provided the other detectives with his address. The trial transcript further reveals that Sergeant Williams testified that upon her arrival at the scene of the shooting, she heard through the dispatch radio that the alleged shooter had already been identified, located, and arrested.

A reversal of a defendant's conviction is appropriate only if, pursuant to the harmless error analysis, there is "a reasonable possibility that the evidence might have contributed to the verdict." *State v. Skipper*, 2011–1346, p. 10 (La. App. 4 Cir. 10/10/12), 101 So.3d 537, 544 (citing *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Gibson*, 391 So.2d 421, 426–27 (La. 1980)). Furthermore, in making this determination, "importance

of the evidence to the State's case, the presence or absence of additional corroboration of the evidence, and the overall strength of the State's case" are factors that should be considered. *Weber*, 2002–0618, p. 21, 834 So.2d at 554 (citing *State v. Wille*, 559 So.2d 1321, 1332 (La. 1990)).

While an argument could possibly be made that Detective Pardo and Sergeant Williams' statements constitute hearsay evidence, even if both of these statements were revoked, the jury was still presented with Officer Valencia's testimony that three eyewitnesses were able to identify the defendant as the shooter and provide them with the defendant's address. Moreover, the jury was also presented with live testimony from the victim's husband, who testified that the individual involved in the machete fight was the same individual who later returned in the red Pontiac and shot the victim. Thus, Detective Pardo's and Sergeant Williams' identification statements were cumulative in that they merely corroborated this evidence.

The jury obviously chose to believe the evidence presented by the State, and this Court is not called upon to independently question whether it believes the witnesses' testimony. Because they were cumulative, we cannot say that Detective Pardo's and Sergeant Williams' identification statements reasonably contributed to the verdict. Therefore, the admission of this testimony, if error, is harmless, and the defendant failed to show he was entitled to relief on this basis.[22]

The Louisiana Supreme Court subsequently denied relief without assigning additional reasons.

As an initial matter, to the extent Ramirez may be asserting a state-law hearsay claim in this proceeding, that claim is not cognizable here. Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States—mere violations of state law will not suffice. 28 U.S.C. § 2254; *Engle v. Isaac*, 456 U.S. 107, 119 (1983).

As for the cognizable federal claim that his confrontation rights were violated when

---

[22] *State v. Ramirez*, 154 So.3d at 641-42.

he was denied the right to confront witnesses when the trial court allowed inadmissible hearsay, that claim lacks merit for the following reasons.    As set forth above, the state courts found the hearsay error, if any, was harmless.    It is well-established that Confrontation Clause violations are also subject to a harmless-error analysis.    *Fratta v. Quarterman*, 536 F.3d 485, 507 (5th Cir. 2008).    In the instant case, the Court likewise finds that a Confrontation Clause violation, if any, was similarly harmless upon applying controlling federal law.

On federal habeas review, the harmlessness of a purported constitutional error is analyzed under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).    The United States Fifth Circuit Court of Appeals has explained:

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful. *O'Neal v. McAninch*, 513 U.S. 432, ––––, 115 S.Ct. 992, 994, 130 L.Ed.2d 947 (1995).

*Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996).

Here, there was no defense objection to Officer Valencia's testimony, which included statements and identifications made by the three witnesses in the course of the investigation that led to Ramirez being apprehended for the drive-by shooting.    When defense counsel did object, the trial court overruled both the hearsay objection to Detective Pardo's testimony that the three witnesses told him the perpetrator's name was Jose and they knew where he lived, as well as the objection to Sergeant Williams' testimony that when she arrived a name and address for the perpetrator had been determined and Ramirez

apprehended.    Ramirez argues that the detectives' testimony in this regard was used to establish his identification as the shooter and that he had no opportunity to cross-examine the three witnesses, who did not testify at trial.

Although the testimony concerning the eyewitness identifications might possibly have contributed in some way to the jury's verdict, it cannot fairly be said to have substantially influenced that verdict.    Rather, the critical evidence that resulted in Ramirez's conviction was undoubtedly his own confession that he was responsible for the drive-by shooting that killed the victim. The confession and its importance to the outcome simply cannot be ignored.    Even if the state court erred in allowing into evidence statements concerning the identification of Ramirez from non-testifying witnesses, that error was ultimately harmless.    Accordingly, this claim should be denied.

*C.  Inadequate Translation and Recording*

Ramirez claims that he was deprived of his Sixth and Fourteenth Amendment rights under the United States Constitution to counsel and confrontation of witnesses and due process because of the trial court's refusal to grant his motion to record simultaneously and to provide him, at the State's expense, the Spanish language interpreter's translations during the trial proceedings.[23]    Ramirez also disputes the adequacy of his appointed interpreter's qualification and abilities resulting in alleged deficient translation and inaccuracies that denied him a fair trial.

---

[23] *See* State Rec., Vol. 9 of 10, Louisiana Fourth Circuit Writ No. 2011-K-1355 with attached trial court motion and ruling. *State v. Ramirez*, 2011-K-1355 (La. App. 4 Cir. Sept. 30, 2011) (Belsome, J., dissenting).

In denying the motion for recording of simultaneous translation, the trial court ruled

that although not a function of the court, the defense would be permitted to provide its own

recording device to preserve a record of the translation.[24]    The trial court ruling was upheld

by the court of appeal on supervisory review and again on direct appeal.    In denying the

claim on direct appeal, the Louisiana Fourth Circuit held:

> In the defendant's third and final assignment of error, he asserts the trial court
> erroneously denied his motion to record simultaneous interpretations at trial.
> Specifically, the defendant assigns error to the trial judge's failure to consider
> the defendant's indigent status, as determined by the trial court, when
> permitting him to record the proceedings at his own expense. It should be
> noted at the outset of this assignment of error that the record reflects that the
> defendant does not speak English, and his primary language is Spanish.
>
> Pursuant to La.C.Cr.P. art. 25.1, a court is required to appoint an interpreter, if
> requested, for a non-English-speaking person who is a principal party in a
> court proceeding after consultation with said person or his attorney. Here, the
> defendant was appointed an interpreter, Haidy Ochoa, and his testimony was
> translated into English. The defendant, however, argues that as only the
> translated English version was recorded, it is impossible to meet his burden of
> proving specific prejudice. In support of his argument, the defendant notes
> several factors, such as the translator's lack of qualifications, the numerous
> translation issues during trial, and the initial translator's discharge for
> threatening witnesses at the grand jury proceedings, that would allegedly
> show actual prejudice if the English–to–Spanish and Spanish–to–English
> interpreter's translations had been recorded.
>
> In addressing the defendant's first argument, we do not agree. While La.C.Cr.P.
> art. 25.1 requires appointment of an interpreter who is "competent to
> interpret or to translate the proceedings to him and to interpret or translate
> his testimony," the interpreter is required to be qualified only if the accused is
> deaf or severely hearing-impaired; the defendant in the instant case is neither.
> *State v. Santos*, 2009–789, p. 9 (La. App. 5 Cir. 4/13/10), 40 So.3d 167, 173; *See*
> La. R.S. 15:270. Despite the defendant's contention that the interpreter did not
> possess the requisite credentials, Ms. Ochoa did not need to be formally
> certified or otherwise qualified; thus, her appointment was not error.

---

[24] The defense position, however, was that he was entitled as an indigent defendant
to such services and could not afford to provide his own recording equipment.

The defendant's second argument concerning the translation discrepancies is likewise without merit. When, as here, a defendant has failed to point to any specific prejudice related to instances of improper translation, the trial court's judgment shall not be reversed by the appellate court. *See State v. Gonzalez*, 2007–0532, pp. 5–6 (La. App. 4 Cir. 11/28/07), 973 So.2d 115, 118; *see also* La. C.Cr.P. art. 921. In the present case, the defendant has not claimed any specific prejudice arising out of the interpreter's translations. Rather, the defendant asserts that because the interpreter asked for shorter questions, clarification, or a correction a total of eight times during the defendant's testimony, the translation was deficient. This assertion is merely an assumption and, absent support, falls short of demonstrating that the defendant's substantial rights were violated.

The defendant's final argument on this assignment of error also merits no relief. The fact that the initial interpreter was discharged from this case for her inappropriate behavior during pre-trial proceedings is wholly unrelated to Ms. Ochoa and Ms. Ochoa's role at trial. Accordingly, we find no error in the trial court's denial of the defendant's motion to record simultaneous interpretations.[25]

The Louisiana Supreme Court subsequently denied relief without assigning additional reasons.

Ramirez claims that he was entitled to simultaneous recordings of the proceedings (Spanish-to-English and English-to-Spanish) in order to allow him an opportunity to show specific prejudice in the trial proceedings against him. He fails, however, to cite any United States Supreme Court decision holding that a criminal defendant has a constitutional right to simultaneous translation recordings when he lacks the English language skills necessary to meaningfully participate in his trial without an interpreter. Nor is the Court aware of any stand-alone constitutional right to be provided a recording of the sort of translation he requested (*i.e.*, the English to Spanish translations by his interpreter). Given the absence

---

[25] *State v. Ramirez*, 154 So.3d at 642-43.

of any federal controlling law on the issue, he cannot show that the state-court decision rejecting his claim was unreasonable.[26]    *See Lopez v. California*, Civ. Action 18-03804, 2019 WL 8017732, at *7 (C.D. Cal. Oct. 25, 2019), *adopted* 2020 WL 2514871 (C.D. Cal. May 14, 2020) (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding" the claim, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'")) (alterations in original).

Furthermore, the record reflects that Ramirez was provided a Spanish-speaking interpreter throughout his trial proceedings.    He makes unsupported arguments about the translation services she provided in a futile attempt to prove that his trial was fundamentally unfair.    As for his claim of "deficiencies," Ramirez alleges only generally "a lack of qualifications, numerous translation issues during trial, and the initial translator's discharge for threatening witnesses at the grand jury proceedings."[27]    The appellate court noted the latter grounds did not even involve Haidy Ochoa, the interpreter at issue,[28] and found no

---

[26]    To the extent he may be arguing that the state court improperly applied state law concerning interpreters, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Swarthout v. Cooke*, 526 U.S. 216, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68; *see also*, *Molo v. Johnson*, 207 F.3d 773, 776 n.9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); *Hogue v. Johnson*, 131 F.3d 466, 506 (1997) (a disagreement as to state law is not cognizable on federal habeas review). The state courts' application and interpretation of Louisiana law regarding appointment and use of an interpreter are not bases for federal habeas corpus relief.

[27]    Rec. Doc. 5-1, p. 29.

[28]    *See* State Rec., Vol. 6 of 10, Transcript, pp. 14-20 (Examination of Haidy Ochoa's

support in the record for the allegations of inferior qualifications or translation discrepancies, thus concluding that he failed to demonstrate that any substantial rights were violated.   Ramirez offers no specific instance or objective evidence to show that the translation was anything but complete and accurate.   He fails to explain how the interpreter's "request for shorter questions, clarifications and corrections eight times during his testimony" constitutes deficiencies in translation or how it prejudiced him.   *See Bonney v. Tanner*, Civ. Action 18-7978, 2019 WL 5790808, at *15 (E.D. La. June 7, 2019), *adopted* 2019 WL 5784998 (E.D. La. Nov. 6, 2019).   His argument rests on the purely speculative and conclusory assertion that "if the English-to-Spanish and Spanish-to-English interpreter's translations had been recorded, he would be able to show actual prejudice."   Thus, he presents nothing to indicate that he was deprived of the ability to protect his constitutional rights "to be meaningfully present at one's own trial, to assist in one's own defense, to have effective assistance of counsel and to confront the government's witnesses on cross examination."   *United States v. Mejia-Perez*, CR 18-00062-TUC-RM (EJM), 2018 WL 3015012, at *5 (D. Ariz. May 30, 2018), *adopted* 2018 WL 3012215 (D. Ariz. June 15, 2018), (quoting *United States v. Mosquera*, 816 F. Supp. 168, 172 (E.D.N.Y. 1993)).   Accordingly, he fails to demonstrate a federal constitutional violation to support his claim for habeas relief. Ramirez cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by

---

qualifications and acceptance as an interpreter for Ramirez's trial). *See also* State Rec., Vol. 4 of 10, R.p. 482, Motion for Impartial Interpreter (alleging impartiality by appointed interpreter, America Iglesias, for the grand jury proceedings).

the Supreme Court of the United States.

### D. Ineffective Assistance of Counsel

Ramirez asserts that trial counsel was constitutionally ineffective for failing to challenge a prospective juror, failing to compel the appearance of several witnesses at trial, stipulating to a ballistics report, and failing to object to the scope of the coroner's testimony. Ramirez raised the ineffective assistance claim in his application for post-conviction relief. The state district court reviewed and denied the claims under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).    The Louisiana Fourth Circuit denied his supervisory writ application without stated reasons.    The Louisiana Supreme Court denied his related writ application finding he failed to show he received ineffective assistance of counsel under the standard of *Strickland*.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.    Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. at 697.    A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."    *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689.    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.    In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."    *Crockett*, 796 F.2d at 793.

The United States Supreme Court has held that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt."

*Burt v. Titlow*, 571 U.S. 12 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190). In

*Harrington v. Richter*, 562 U.S. 86, 101 (2011), the Supreme Court discussed the highly

deferential standard of review applicable to an ineffective-assistance claim:

> Surmounting *Strickland's* high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

*Id.* at 105 (citations omitted; emphasis added).

Because the state courts rejected Ramirez's ineffective assistance of counsel claims

on the merits and because such claims present a mixed question of law and fact, this Court

must defer to the state-court decision unless it was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

For the following reasons, the state courts' determination was neither contrary to, nor an

unreasonable application of, clearly established federal law.

*1. Prospective Juror*

First, Ramirez claims that trial counsel was ineffective for not challenging a juror who stated that he would prefer to hear an explanation from a defendant about a purported false confession.    Ramirez contends that the response demonstrated potential bias because he implied that he would not be fair or impartial if defendant remained silent.    Both the state and the defense in this case found him acceptable and he served on the jury.    The trial court rejected the post-conviction relief claim finding no bias was shown, because, despite the seemingly prejudicial remark, the juror had also agreed that even if the defendant did not testify, he would take into account all of the evidence presented in determining whether or not the defendant had made a false confession, and that he would follow the instructions given by the court.    The Louisiana Fourth Circuit declined to exercise its supervisory jurisdiction.    Ultimately, the Louisiana Supreme Court agreed that he had failed to satisfy his burden of proving ineffective assistance under *Strickland*.

An attorney's decision whether to request removal of a juror is generally a matter of trial strategy.    *See Ray v. Johnson*, 196 F.3d 1257 (5th Cir. 1999); *Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989); *Wash v. Hood*, Civ. Action 07CV46, 2007 WL 3047149, at *5 (N.D. Miss. Oct. 17, 2007) (citing *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995)). Counsel's decision in this regard is entitled to a strong presumption of reasonableness. *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (recognizing a strong presumption that strategic or tactical decisions made after adequate investigation fall within the wide range of objectively reasonable professional assistance).    The record establishes that counsel acted

reasonably in not challenging this juror.

At times, this juror made comments that were not advantageous to either the prosecution or the defense, but upon further questioning in each instance, he agreed that he would follow the law and the instructions given by the court.    For example, when the juror was initially questioned by the prosecutor, he indicated that before he would render a guilty verdict, he would want an explanation from the State regarding the motive for the crime. However, the prosecutor delved further, and he stated that he understood in some cases the State was not required to prove motive and that he would follow the Court's instructions if that was the law.[29]    Upon defense examination with regard to a defendant's false confession, the same juror initially indicated that he would like to hear the defendant explain the purported false statement he made.    However, upon further asking what would happen if the defendant did not testify, could he then consider other factors presented surrounding the false confession, he indicated he could.    He did not state that without the defendant's testimony he would be unable to find a confession was false.    Under the circumstances, the defense had no compelling reason to remove the juror considering his earlier remarks about the State proving motive, which actually favored the defense, and the defense already knowing that it would have to present Ramirez's testimony about the coerced confession at trial, thereby making the comment less significant, especially when coupled with the juror's willingness to apply the law and render a verdict based upon the facts presented.    The reasonable exercise of trial strategy, as occurred here, cannot constitute deficient

---

[29]  State Rec., Vol. 6 of 10, Voir Dire Transcript (Boissiere), pp. 39-46.

performance.[30]    *See, e.g., Ray v. Johnson*, 196 F.3d 1257 (5th Cir. 1999); *Tolliver v. United States*, No. 07-cv-525, 2009 WL 1393300, at *6 (S.D. Ill. May 15, 2009) ("[T]he decision of when to use a peremptory strike lies firmly within the realm of 'strategic choices' that the Court will not second guess on collateral review.").    Nor would a cause challenge to a juror have been sustained when his responses overall did not exhibit bias and he indicated a willingness to decide the case impartially by following the law and evidence.    Ramirez is not entitled to relief on this claim.

Ramirez's remaining claims fault counsel for performing inadequate investigation into the three eyewitnesses, failing to call them at trial and allowing hearsay testimony about their statements through Officer Valencia; stipulating to the ballistics expert report; and failing to object to the scope of the forensic pathologist's testimony about the bullet fragments recovered during the autopsy.    The state district court found no deficient performance or prejudice under *Strickland*, citing the overly general and conclusory nature of the claims and counsel's discretionary and reasonable trial strategy.    The appellate court declined supervisory review, and the Louisiana Supreme Court ultimately agreed that he failed to satisfy his burden of proving ineffective assistance of counsel under *Strickland*.

*2.   Investigation, Calling Witnesses and Objections to Hearsay*

As for counsel's investigation, the record shows that he requested extensive discovery from the State.    In advance of trial, he was provided with the statements taken

---

[30]   The state court record shows that the defense used only nine of its twelve peremptory strikes, thus reinforcing that defense counsel chose not to strike Boissiere in the exercise of trial strategy. State Rec., Vol. 1 of 10, Minute Entry, 10/4/11; State Rec., Vol. 4 of 10, R.p. 318, Defense Counsel's Peremptory Challenges List.

from five witnesses as part of the investigation, including the three Spanish-speaking eyewitnesses at issue.    As of November 2010, defense counsel acknowledged that he was in possession of the transcripts of the witnesses' statements that were recorded in Spanish and then translated to English.    Although he had the fully transcribed statements and was aware of the four individuals who allegedly participated in show-up identification procedures (which included the victim's husband), the individuals' names were redacted from the statements provided by the State.    Defense counsel filed a motion for completion of discovery on November 16, 2010, by which he sought even more information, including the actual recordings in Spanish so that the defense could transcribe the statements, the designation for each statement of the names of the respective individual who provided each statement, and the criminal history printouts and information on any individuals the State intended to call as a witness at trial.[31]    On the morning of trial, defense counsel argued that this additional discovery had not been provided.    The State pointed out that the defense was already in possession of the transcripts and argued that it was not obliged to reveal the identity of the individuals and would only need to provide the rap sheets if the State intended to call the individuals as witnesses at trial.    The trial court agreed that the defense was not entitled to the information and denied the request.[32]    The defense objected to the ruling.

_____

[31]  State Rec., Vol. 4 of 10, R.p. 451, Motion for Completion of Discovery.

[32]  State Rec., Vol. 6 of 10, Trial Transcript (Oct. 4, 2011), pp. 22-27.    The defense suggested there was exculpatory information in the statements (*i.e.*, people who say they didn't see the shooting), which was provided pursuant to *Brady*.    The trial court rejected that assertion, stating that the defense was now changing its argument and it appeared that the information was not provided pursuant to any *Brady* request.    *Id*. at 25-26.

Ramirez appears to allege that additional investigation might have refuted the purported witness identifications by showing that the witnesses were standing too far away to see the shooter in the vehicle.    However, he has not specified the alleged deficient investigative steps taken or omitted by trial counsel, and thus, cannot establish that counsel performed deficiently.    *Jenkins v. Vannoy*, Civ. Action 19-10688, 2020 WL 4808794, at *9 (E.D. La. May 21, 2020), *adopted* 2020 WL 4784983 (E.D. La. Aug. 18, 2020).    The record reflects that defense counsel was adequately prepared for trial.    He obtained voluminous discovery and all five witnesses' statements (including the three witnesses at issue).    He had their full recorded transcribed statements and knew exactly what they saw or were unable to see at the time of the shooting.    Defense counsel even sought additional information, albeit unsuccessfully, to be more thoroughly prepared for cross-examination if the State had called the witnesses at trial.    Finally, defense counsel effectively elicited from Officer Valencia the fact that he had no idea where the witnesses were standing at the time of the shooting.[33]

Furthermore, Ramirez failed to prove that prejudice resulted from the alleged inadequate investigation.    A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown and that the outcome would have been different as a result.    *Diaz v. Quarterman*, 239 F. Appx. 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052).    To make that showing, he must point to evidence in the record demonstrating that further investigation would in

---

[33]  *Id*. at 253.

fact have revealed additional information beneficial to the defense.    *See Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998); *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Wilson v. Cain*, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), *aff'd*, 641 F.3d 96 (5th Cir. 2011); *Davis v. Cain*, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).    Because Ramirez has not identified any additional beneficial evidence that could or would have been discovered in a more thorough investigation, his claim is wholly speculative and, therefore, necessarily fails.    *See, e.g.*, *Perry v. Louisiana*, Civ. Action No. 19-13002, 2020 WL 1892794, at *19 (E.D. La. Mar. 30, 2020), *adopted*, 2020 WL 1889188 (E.D. La. Apr. 16, 2020); *Eaglin v. Louisiana*, Civ. Action No. 19-9659, 2020 WL 475770, at *25 (E.D. La. Jan. 7, 2020), *adopted*, 2020 WL 474923 (E.D. La. Jan. 20, 2020).

In a similar claim, Ramirez argues that his counsel was ineffective for failing to subpoena the three witnesses for the defense in order to establish precisely where they were standing at the time of the shooting so that he could challenge the accuracy of their show-up identifications.    The state courts found the claim speculative and conclusory and entirely insufficient to prove ineffective assistance of counsel.

The United States Fifth Circuit Court of Appeals has held:

Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense*. This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (emphasis added; citations, quotation marks, and brackets omitted); accord *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."). The United States Fifth Circuit has emphasized that "the seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.' " *Hooks v. Thaler*, 394 F. Appx. 79, 83 (5th Cir. 2010) (quoting *Woodfox*, 609 F.3d at 808). Here, not only has Ramirez produced no affidavits from the unnamed witnesses, but he also fails to establish how their physical positions at the time of the shooting made them any less certain that it was Ramirez's vehicle that returned to the scene shortly after the machete incident, or that it was Ramirez, whom they saw previously fighting with an individual at the scene, that was responsible for the shooting. Nor has he established how an estimate on where they were all standing (*i.e.*, how far away they were from the shooter's vehicle) would have altered the outcome given the likely damaging testimony they would also have offered against Ramirez and the fact that it would not have negated Ramirez's confession or the fact he had no alibi. Instead, counsel wisely chose to elicit from Officer Valencia that the witnesses did not tell him where they were standing at the time the shots were fired and thus place doubt in jurors' minds through this testimony elicited on cross-examination.[34]

---

[34] State Rec., Vol. 6 of 10, Trial Transcript, p. 253.

Although he suggests that had trial counsel engaged in this line of questioning earlier during the suppression hearing it may have altered the outcome of trial, he fails to explain how this would have been any more effective or achieved a different result insofar as the State still being able to elicit this testimony from Officer Valencia and the entirely reasonable manner in which trial counsel chose to deal with it at trial.    Thus, Ramirez has offered nothing to show that the witnesses at issue would have offered testimony favorable to the defense or that the testimony would have altered the outcome of the trial.    He has failed to establish any deficiency or prejudice arising from counsel's failure to subpoena the three witnesses.

In another related claim, Ramirez also argues that trial counsel was ineffective for failing to object to the admission of the hearsay statements from the three witnesses elicited at trial through Officer Valencia's testimony.    He claims that in violation of his right to confront eyewitnesses who identified him, the State elicited hearsay testimony from Officer Valencia when he was describing the events that occurred right after the shooting and his role in assisting Detective Pardo and Detective Matthews during the investigation.    The following exchange occurred:

Q. And what particular task did he have you assist in when you – after you spoke with him?

A. He apparently had located some witnesses, and he wanted me to go with another detective, Matthews, to actually try to find the location and address of the possible perpetrator.

Q. And was your role in that to act as a translator between the witnesses and the other police officer?

A. Yes. That was my duty, basically as an interpreter.

Q. And did you and -- do you recall how many witnesses it was that were placed into a car?

A. There was three of them.

Q. And were you in the car with the witnesses and another police officer?

A. Yes, I was.

Q. Now, were you all driving at the direction of the witnesses?

A. Yes.

Q. Were you in a marked police car or an unmarked car, if you recall?

A. Unmarked.

Q. What was – can you explain to the ladies and gentlemen what happened? What happened when you get to the car?

A. Basically, I was asking them what area did this subject live. With Hispanic culture if they are not familiar with the area, they use landmarks. So they might say, you know, you have to turn by that green building there. You have to go down the street. There was a pink house here. So I had to translate that information, trying to locate where we were headed, because we didn't have a physical address.

Q. And what happened next?

A. After that, at certain points we locate the residence. And we couldn't see the numbers, so we wanted to make a second pass to make sure we had the right numbers of the location where they told us that he lived. At that point we were making a second pass to look at the numbers. *The subjects in the car started stating that, "There he is." There was a red car parked the second time we passed, and the gentleman was getting out. And they said, "That's him. That's him."* So at that point we relocated to go away from that area.[35]

"The failure to object generally falls within the ambit of trial strategy." *Sylve v. Cain*,

Civ. Action 14-1180, 2016 WL 4592135, at *5 (E.D. La. Sept. 1, 2016) (Brown, J.) (footnote

and quotation marks omitted); *Smoot v. Vannoy*, Civ. Action, 17-14945, 2018 WL 2977237,

---

[35] State Rec., Vol. 6 of 10, Trial Transcript, pp. 236-37 (emphasis added).

at *23 (E.D. La. May 17, 2018).    Moreover, strategic choices by counsel are to be afforded a

high degree of deference:

> The United States Supreme Court has cautioned courts not to second-guess
> counsel's decisions on matters of trial tactics through the distorting lens of
> hindsight. Courts are to employ a strong presumption that counsel's conduct
> falls within a wide range of reasonable assistance and, under the
> circumstances, might be considered sound trial strategy. A conscious and
> informed decision on trial tactics and strategy cannot be the basis for
> constitutionally ineffective assistance of counsel unless it is so ill chosen that
> it permeates the entire trial with obvious unfairness.

*Sylve*, 14-1180, 2016 WL 4592135, at *5 (quotation marks and footnotes omitted); *accord*

*Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly

deferential. ... [A] court must indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance; that is, the defendant must overcome

the presumption that, under the circumstances, the challenged action might be considered

sound trial strategy." (quotation marks omitted)); *Burnett v. Collins*, 982 F.2d 922, 930 (5th

Cir. 1993); *Forman v. Cain*, Civ. Action 07-4200, 2008 WL 1746710, at *7 (E.D. La. Apr. 14,

2008).    That deference is appropriate here where the defense strategy was objectively

reasonable.    The fact that the witnesses knew Ramirez and had seen him at the scene was

not disputed.    The video surveillance showed Ramirez in the red Pontiac, but only captured

his fight with another individual that night shortly before the shooting.    Officer Valencia's

testimony alone—without the critical witness identifications themselves—only bolstered the

defense's theory that the witnesses were already familiar with Ramirez and mistakenly

connected him to the shooting based solely on a vehicle description and seeing Ramirez in a

fight.    The defense then used the absence of the witnesses to its advantage, resting its case

largely on the fact that the State failed to produce a single witness who could testify that he

saw Ramirez shoot the victim.[36]    Thus, the state court reasonably denied this claim because Ramirez could not show that counsel's performance was deficient in order to prevail under *Strickland*.

3.  *Stipulation to Ballistics Report*

Next, Ramirez argues that counsel was ineffective for entering a joint stipulation to the report of firearms examiner, Kenneth Leary.    The stipulation encompassed two reports authored by Leary regarding his examination of the only gun recovered—a Pick Arms .25 caliber semiautomatic pistol from Ramirez's residence—along with several items associated with a .38 caliber revolver, including a fired bullet, a fired bullet jacket fragment, a lead bullet core fragment, and a fired unknown caliber lead fragment (not suitable for caliber identification or firearms comparison).[37]

Ramirez's claim involves only the one bullet that was removed from a tree adjacent to where the victim was standing at the time of the shooting.    Ramirez alleges that trial counsel effectively "stipulate[ed] to the examiner's findings that the bullet was a derivative from the shooting at issue without questioning the validity of the examiner's conclusions."[38] He contends that competent counsel would have argued that the bullet retrieved three days later may have been from a separate shooting.    He also claims that the stipulation prejudiced the defense by leaving "no way to dispute whether the bullet retrieved from a

---

[36]  State Rec., Vol. 7 of 10, Closing Argument, pp. 467-71, 475-76, 485.

[37]  State Rec., Vol. 7 of 10, Trial Transcript, pp. 346-47.

[38]  Rec. Doc. 5-1, pp. 13-14.

tree three days after the crime came from the same murder weapon involved in this case, or otherwise confront the examiner providing prima facie evidence of the ballistic evidence in this matter."[39]

A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. The stipulation in this case was strategic in nature and did not adversely impact the outcome of the case. Firearms examiner Kenneth Leary's findings were all related to an unknown .38 caliber revolver. The only gun linked to Ramirez was a .25 caliber semiautomatic pistol that Leary found did not even fire properly. Far from damaging the defense's case, those findings strengthened the defense theory that he was not the shooter. The reported findings in no way linked the bullet in the tree to Ramirez. Whether the bullet found in the tree was a "derivative" of the instant shooting was never conclusively established because no murder weapon was recovered. The only theoretical link was gleaned from the testimony offered by Detective Pardo and Sergeant Williams concerning their investigation and belief that the projectile in the tree was possibly derivative of the shooting.[40]

Here, the results of the report were not contested and the firearms examiner's testimony would not have changed the outcome of the proceedings. Ramirez cannot

---

[39] *Id*. at 14.

[40] State Rec., Vol. 7 of 10, Trial Transcript, pp. 278, 313-15.

establish prejudice absent showing there is a reasonable probability that, but for counsel's stipulation, the result of the proceeding would have been different.    *Strickland*, 466 U.S. at 694.    He has not done so.    Ramirez fails to show that it was unsound trial strategy on the part of trial counsel to agree to the stipulation or that doing so had any impact whatsoever on the outcome of the proceedings.    Accordingly, this claim lacks merit.

### 4.   *Scope of Coroner's Testimony*

Finally, Ramirez claims that forensic pathologist Dr. Paul McGarry's testimony regarding the size, material, and caliber of the bullet retrieved during the autopsy of the victim exceeded the bounds of his expertise, and that counsel's failure to object to the scope of that testimony constituted ineffective assistance.    Ramirez cites the following objectionable testimony offered by Dr. McGarry in response to the State's questioning the victim's cause of death:

> A. The cause of death was a gunshot wound to the head. It entered above and behind the right ear, four inches above, two inches behind the ear, went into the scalp and the skull, drove bone into the brain, caused a brain injury which was followed by massive brain swelling, and this was the cause of death. Imbedded in the wound of the bone underneath the skin wound, were parts of a bullet that I removed. And the base of the bullet measured nine millimeters, which is the same size or was as close as I could measure of a .38 caliber bullet with a brass jacket and a lead core. Part of the bullet had escaped through a partial exit above the entry, but most of the bullet stayed in the bone.[41]

Ramirez argues that his testimony should have been limited solely to the "cause of death." He alleges prejudice resulted when counsel essentially allowed him to testify that the bullet found in the victim was the same size, caliber and composition as the bullet found in the tree

---

[41]  State Rec., Vol. 7 of 10, Trial Transcript, p. 343.

near the crime scene, which only bolstered the report of the firearms examiner.

Dr. McGarry testified to the cause of death from a gunshot wound and his autopsy findings, namely what he removed from the victim and recognized upon measurement as a .38 caliber bullet and its path through the body.   The context surrounding his excerpted medical testimony flatly contradicts Ramirez's suggestion that Dr. McGarry offered direct expert opinion on the caliber weapon used by the shooter or any conclusions to be reached based upon the bullets recovered at the crime scene.   Thus, Ramirez has not demonstrated that Dr. McGarry testified outside of his area of expertise such that an objection by counsel would have been warranted, much less sustained.   Plainly, "[c]ounsel is not required to make futile motions or objections."   *Garcia v. Stephens*, 793 F.3d 513, 525 (5th Cir. 2015), quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).   Furthermore, as discussed previously, the fact that it was a .38 caliber bullet bolstered the defense's theory that someone other than Ramirez shot the victim with a .38 caliber revolver, which Ramirez did not own.   Thus, even if the testimony was objectionable, defense counsel's strategy not to object falls soundly within the realm of reasonable trial strategy.

Additionally, Ramirez has not shown a reasonable probability that the outcome of the trial would have been different had counsel objected.   Defense counsel agreed to stipulate to the undisputed findings in the firearms examiner's report concerning the caliber of the bullets and fragments recovered from the autopsy.   Therefore, the size and caliber of the bullet recovered from the victim's autopsy was entered into evidence and before the jury regardless, and the impact of such evidence was relatively small and perhaps even helpful to the defense under the circumstances.   This claim does not warrant relief.

Accordingly, Ramirez has failed to show that the state courts made an unreasonable determination in denying the ineffective assistance claims under *Strickland*.  Ramirez has not demonstrated that the state courts' decisions rejecting this claim were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Ramirez's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[42]

New Orleans, Louisiana, this __11th__ day of _____March_____, 2020.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[42] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.